WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Otha Johnson,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan; et. al.,<br><br>    Respondents. | No. CV 08-496-TUC-AWT<br><br>**ORDER** |

Petitioner is an inmate presently confined at the Florence-North Unit of the Arizona Department of Corrections. Pending before the Court is Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1).[1] For the following reasons, the Petition is DENIED.

**I.     Factual and Procedural Background**

    **A.     State Proceedings**

Petitioner was charged by the State in Pima County Superior Court, Tucson, Arizona, case number CR 2004-1608 with the following four related charges arising on January 1,

---

[1] Petitioner originally named Dora B. Schriro as one of the Respondents. Charles L. Ryan has now replaced Ms. Schriro as Director of the Arizona Department of Corrections and he is automatically substituted as a party in place of Ms. Schriro. *See* Fed.R.Civ.P. 25(d).

1 | 2004: Aggravated Driving Under The Influence, While License Is Suspended, Revoked Or
2 | In Violation Of A Restriction, a class four felony (Count 1); Aggravated Driving With An
3 | Alcohol Concentration Of 0.08 Or More While License Is Suspended, Revoked Or In
4 | Violation Of A Restriction, a class four felony (Count 2); Aggravated Driving Under The
5 | Influence Having Committed Or Been Convicted of Two Or More Prior DUI Violations, a
6 | class four felony (Count 3); and Aggravated Driving With An Alcohol Concentration of 0.08
7 | Or More, Having Committed Or Been Convicted of Two Or More Prior DUI Violations, a
8 | class four felony (Count 4). (Answer (Doc. 11), Exh. 1.) The State also alleged that
9 | Petitioner had prior convictions for Shoplifting and Second-Degree Escape, and two prior
10 | convictions for Driving Under the Influence. (*Id.*)

Petitioner was charged by the State in Pima County Superior Court case number CR 2004-1950 with the following four related charges arising on May 19, 2004: Aggravated Driving Under The Influence, While License Is Suspended, Revoked Or In Violation Of A Restriction, a class four felony (Count 1); Aggravated Driving With An Alcohol Concentration Of 0.08 Or More While License Is Suspended, Revoked Or In Violation Of A Restriction, a class four felony (Count 2); Aggravated Driving Under The Influence Having Committed Or Been Convicted of Two Or More Prior DUI Violations, a class four felony (Count 3); and Aggravated Driving With An Alcohol Concentration of 0.08 Or More, Having Committed Or Been Convicted of Two Or More Prior DUI Violations, a class four felony (Count 4). (Answer, Exh. B.) The State also alleged that Petitioner had prior convictions for Shoplifting and Second-Degree Escape, and two prior convictions for Driving Under the Influence. (*Id.*)

The trial court consolidated CR 2004-1608 and CR 2004-1950. (*See* Answer, Exh. L, p.1 n.1.)

Petitioner entered into a plea agreement under which he agreed to plead guilty to the following charges: Count 1 in CR 2004-1608, Aggravated Driving Under The Influence, While License Is Suspended, Revoked Or In Violation Of A Restriction; and Count 1 in CR 2004-1950, Aggravated Driving Under The Influence, While License Is Suspended, Revoked

Or In Violation Of A Restriction. (Answer, Exh. C, p.1.) Under the plea agreement, Petitioner also admitted to the prior felony conviction for Second-Degree Escape. (*Id.* at p. 2.) At the change of plea hearing, the trial court confirmed that there was no agreement as to whether the sentences would be concurrent or consecutive and advised Petitioner:

> Q: (By The Court)... It is up to me to decide when I sentence you in the first case, whether that sentence is concurrent or consecutive to the second case.
> Do you understand, sir?
> A: Yes.

(Answer, Exh. D, p. 4.) At the change of plea hearing with regard to CR 2004-1608, Petitioner admitted to having alcohol in his system while driving on January 1, 2004, that his blood alcohol content was .23 on that occasion, and that he knew his license was suspended or revoked. (*Id.* at pp. 6-7.) With regard to CR 2004-1950, Petitioner admitted driving after drinking and that drinking impaired his ability to drive at least to the slightest degree. (*Id.* at p.8.) Petitioner also admitted the prior conviction for Second-Degree Escape. (*Id.*) The court found that Petitioner's guilty pleas were made knowingly, intelligently, and voluntarily. (*Id.* at pp.8-9.)

Petitioner failed to appear for sentencing on the first two sentencing dates and, after the second missed sentencing, the trial court issued a bench warrant for his arrest. (Answer, Exhs. E, F.) Petitioner was subsequently arrested, and sentenced on April 21, 2005 to 2.5 years of imprisonment in CR 2004-1608, and to 4.5 years of imprisonment in CR 2004-1950, the second sentence to run consecutively to the first sentence. (Answer, Exh. I.)

On June 7, 2005, Petitioner filed a *pro se* Notice of Post-Conviction Relief. (Answer, Exh. H.) Counsel was appointed and, on January 3, 2006, Petitioner's Petition for Post-Conviction Relief (hereinafter "PCR Petition") was filed. (Answer, Exh. I.) Therein, Petitioner claimed that he had AIDS and Hepatitis C, that no medical records were presented to the trial court as mitigation at sentencing, and that the prison was not equipped to provide Petitioner with proper medical care. (*Id.* at p. 3.) Petitioner argued that evidence of his illnesses and the prison's inability to properly care for him constituted new evidence that might affect his sentence. (*Id.* at pp.4-5.) Alternatively, Petitioner argued that trial counsel

- 3 -

1 was ineffective for failing to provide the court with Petitioner's medical records as mitigation and for failing to research whether the prison could provide Petitioner with proper medical care. (*Id.* at pp. 6-7.)

On March 17, 2006, the trial court denied Petitioner's PCR Petition finding that Petitioner had failed to present a colorable claim of newly discovered evidence and that Petitioner failed to show that trial counsel's performance fell below an objective standard of reasonableness and that Petitioner was prejudiced thereby. (Answer, Exh. J.)

Thereafter, Petitioner filed a petition for appellate-court review. (Answer, Exh. K.) On March 17, 2006, the Arizona Court of Appeals entered its decision granting review but denying relief. (Answer, Exh. L.)

Petitioner next filed a petition for review by the Arizona Supreme Court which was summarily denied on June 28, 2007. (Answer, Exh. M, N, O.) The Arizona Court of Appeals issued a mandate on September 19, 2007, but withdrew it on October 26, 2007 because Petitioner filed another petition for review by the Arizona Supreme Court on October 15, 2007. (Answer, p. 3 & Exhs. P, Q.) The Arizona Supreme Court summarily denied Petitioner's second petition for review on January 28, 2008. (Answer, Exh. S.)

### B. Federal Petition for Writ of Habeas Corpus

On July 16, 2008, Petitioner placed his Petition for Writ of Habeas Corpus in the prison mailing system and the Petition was file-stamped by the Clerk of Court on September 11, 2008. (Petition, pp. 1, 11.) Petitioner raises one ground for relief wherein he alleges ineffective assistance of counsel, as follows:

> [Petitioner] was under duress due to his medical condition of Active HIV virus then the death of his significant other due to the fact Defendant was in depression. Defense counsel failed in submitting [Petitioner's] medical records, which would assist the [Petitioner] in getting both counts as a concurrent term. Instead, [Petitioner] received a consecutive sentence in both counts, which mostly will be a death sentence to the [Petitioner] due to his HIV medical conditions.

(Petition, p. 6.)

Respondents assert that the Petition is timely filed but that Petitioner's claim is without merit. Petitioner did not file a reply.

## II. Legal Standard

### A. Review of a Claim on the Merits

Pursuant to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), the Court may grant a writ of habeas corpus only if the state court proceeding:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins* 546 U.S. 333 (2006).

Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the "unreasonable application" test. *See Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (*citing Williams v. Taylor*, 529 U.S. 362, 413-14 (2000)). Additionally, a state court's decision is "'contrary to' Supreme Court case law if the state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases."[2] *Van Lynn v. Farmon*, 347

---

[2] "[T]he *only* definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams*, 529 U.S. at 412 . . . . While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999), only the Supreme Court's holdings are binding on the state courts and only those holdings need be

- 5 -

F.3d 735, 738 (9th Cir. 2003) (*quoting Early v. Packer*, 537 U.S. 3, 8 (2002)). "Whether a state court's interpretation of federal law is *contrary* to Supreme Court authority . . . is a question of federal law as to which [the federal courts] . . . owe no deference to the state courts." *Cordova*, 346 F.3d at 929 (emphasis in original) (distinguishing deference owed under the "contrary to" test of section (d)(1) with that owed under the "unreasonable application" test).

Under the second test, "'[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn*, 347 F.3d at 738 (quoting *Clark*, 331 F.3d at 1067). Under the "'unreasonable application clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather that application must be objectively unreasonable.'" *Clark*, 331 F.3d at 1068 (quoting *Lockyear v. Andrade*, 538 U.S. 63 (2003)). When evaluating whether the state decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." *Cordova*, 346 F.3d at 929.[3]

Further, a federal habeas court can only look to the record before the state court in reviewing a state court decision under section 2254(d)(1). *Cullen*, 131 S.Ct. at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of §2254(d)(1) on the record that was before that state court.") (footnote omitted); *Holland v. Jackson*, 542 U.S. 649, 652 (2004) ("[W]e have made clear

---

reasonably applied." *Clark*, 331 F.3d at 1069 (emphasis in original).

[3]Section 2254(d) applies even where there has been a summary denial. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1402 (2011). In such circumstances, the petitioner can satisfy the "unreasonable application" prong of section 2254(d)(1) "only by showing that 'there was no reasonable basis'" for the state court's decision. *Id.* (quoting *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011)).

- 6 -

that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it.") (citations omitted).

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert*, 393 F.3d at 978; *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *cert. denied* 543 U.S. 1038 (2004) ("[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."). Section (d)(2) "applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, . . . that the process employed by the state court is defective, . . . or that no finding was made by the state court at all." *Taylor*, 366 F.3d at 999 (citations omitted). In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues. . . . [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert*, 393 F.3d at 972 (quoting *Taylor*, 366 F.3d at 1000) (emphasis in original).

Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, *i.e.*, evidence presented for the first time in federal court."[4] *Taylor*, 366 F.3d at 1000; *see also* 28 U.S.C. §2254(c). Factual and credibility

---

[4] Under the AEDPA "a determination of a factual issue made by a State court shall be presumed to be correct" and the presumption of correctness may be overcome only by clear and convincing evidence. 28 U.S.C. §2254(e)(1). The "AEDPA spells out what this presumption means: State-court fact-finding may be overturned based on new evidence

- 7 -

determinations by either state trial or appellate courts are imbued with a presumption of correctness. 28 U.S.C. §2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002); *Bragg v. Galaza*, 242 F.3d 1082, 1078 (9th Cir. 2001), *amended* 253 F.3d 1150 (9th Cir. 2001). Furthermore, factual assertions made in support of properly exhausted claims in state court cannot be altered or expanded upon without permission of the federal habeas court. *See Baja v. Ducharme*, 187 F.3d 1075, 1079 (9th Cir. 1999).

Both section 2254(d)(1) and (d)(2) may apply where the petitioner raises issues of mixed questions of law and fact. Such questions "receive similarly mixed review; the state court's ultimate conclusion is reviewed under section 2254(d)(1), but its underlying factual findings supporting that conclusion are clothed with all of the deferential protection ordinarily afforded factual findings under §§ 2254(d)(2) and (e)(1)." *Lambert*, 393 F.3d at 978.

### B.   Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims. To establish that his trial counsel was ineffective under *Strickland*, a petitioner must show that: (1) his trial counsel's performance was deficient; and (2) trial counsel's deficient performance prejudiced petitioner's defense. *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (citing *Strickland*, 466 U.S. at 688, 694).

To establish deficient performance, Petitioner must show that "counsel made errors so serious . . . that counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. The relevant inquiry is not what defense counsel could have done, but rather whether the

---

presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error. . . . Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play" once it is found that the state court reasonably determined the facts in light of the evidence presented in the state proceeding. *Taylor*, 366 F.3d at 1000.

decisions made by defense counsel were reasonable. *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. The Ninth Circuit "h[as] explained that '[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation.'" *Ortiz*, 149 F.3d at 932 (quoting *Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Additionally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct , and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Even where trial counsel's performance is deficient, Petitioner must also establish prejudice in order to prevail on his ineffective assistance of counsel claim. To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Under the prejudice factor, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Because failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Id.* at 697-700.

It is well-settled that a defendant has the ultimate authority to make fundamental decisions regarding whether to plead guilty, waive a jury trial, testify in his or her own behalf, or take an appeal. *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 (1977) (Burger, C.J. concurring). However:

> [No decision of the Supreme Court] suggests . . . that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.

*Jones v. Barnes*, 463 U.S. 745, 751 (1983). To require otherwise would "seriously undermine[] the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id.* The professional judgment and evaluation every defendant is entitled to is an examination of the record, research of the law, and the marshaling of arguments on behalf of the defendant. *Douglas v. California*, 372 U.S. 353, 358 (1963).

Additionally, under the AEDPA, the federal court's review of the state court's decision is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 689-699 (2002). In order to merit habeas relief, Petitioner must make the additional showing that the state court's ruling that counsel was not ineffective constituted an unreasonable application of *Strickland*. *See* 28 U.S.C. §2254(d)(1); *see also Cullen*, 131 S.Ct. at 1403 (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential"); *Harrington*, 131 S.Ct. at 788 ("Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."); *West v. Schriro*, 2007 WL 4240859, *7 (D.Ariz. Nov. 29, 2007).

## III.   DISCUSSION

### A.   The State Proceeding

Respondents have informed the Court that they have been unable to obtain the transcript of Petitioner's sentencing hearing. (Answer, p. 2, n.1.) The record contains a copy of the pre-sentence report wherein, *inter alia,* it is mentioned that Petitioner had been diagnosed with HIV and that, in 2004, he had suffered from pneumonia as a result of HIV. (Answer, Exh. T, p. 3.) The daughter of Petitioner's girlfriend told the probation officer who prepared the report that Petitioner "needs to have alcohol to avoid HIV seizures." (*Id* at p.4.)

The report also reflected that Petitioner "rationalizes his need for alcohol to manage his pain." (*Id.*)

After Petitioner admitted to having one historical prior felony conviction, he was sentenced to consecutive, presumptive prison terms totaling seven years. (Answer, Exhs. G & L, p. 1.)

In his PCR Petition, Petitioner asserted that he has hepatitis C and "advanced, end-stage AIDS," that the prison was "not providing him with proper medical care," and "in sum, he has little time to live." (Answer, Exh. I, pp. 3-4.) Petitioner argued that in light of the new evidence presented in his medical records and because the prison cannot adequately care for him, the court should have imposed a lesser sentence. Alternatively, he argued that trial counsel was ineffective for failing to provide the court with Petitioner's medical records as mitigation, to argue that Petitioner had illnesses as mitigation, and to research whether the prison could provide adequate medical care. (*Id.* at pp. 3, 7.)

In denying Petitioner's PCR Petition, the trial court stated, in pertinent part that:

> At the sentencing hearing, Petitioner admitted having a historical prior Escape conviction. At that time, the State recommended an aggravated term of six (6) years, citing Petitioner's previous Failure to Appear, two Aggravated DUI convictions in less than six (6) months, Petitioner's high blood alcohol concentration and failure to assume responsibility. Defense counsel presented in mitigation Petitioner's alcohol problem and his health situation. Specifically, counsel stated that they "hope Robert will live to get out of prison" and that his "time is very limited." Counsel asked the Court to take Petitioner's special circumstances and health situation into consideration.

(Answer, Exh. J, p.1.) The court also stated that it "was aware of Petitioner's medical condition at the time of sentencing." (*Id* at p. 3.) The court found that Petitioner failed to present a colorable claim of newly discovered evidence that "he has AIDS and Hepatitis C, . . . [and] that the Department of Corrections is not equipped to provide him proper medical care." (*Id.* at pp. 1-2.) With regard to Petitioner's claim of ineffective assistance of counsel the court cited *Strickland,* and concluded that Petitioner "has failed to show that trial counsel's performance fell below an objective standard of reasonableness and that Petitioner was prejudiced thereby." (*Id.* at p.3.)

Thereafter, the appellate court granted Petitioner's Petition for Review but denied

relief. (Answer, Exh. L.) In denying relief, the appellate court stated in pertinent part:

> In its ruling denying post-conviction relief, the judge who had also sentenced Johnson, rejected Johnson's claims and noted that, because trial counsel had informed the court about the severity of Johnson's health situation more than once at sentencing, the evidence was not newly discovered, and therefore, counsel was not ineffective. The trial court denied relief in a detailed, thorough minute entry that clearly identified Johnson's arguments and ruled on them in a manner that is factually supported by the record before us and legally supported by the authorities cited therein. We therefore adopt the trial court's ruling on Johnson's claims and see no need to revisit it. *See State v. Whipple,* 177 Ariz. 272, 274, 866 P.2d 1358, 1360 (App. 1993).
> We additionally note that, even if the court had not previously been fully apprised of Johnson's health issues, it surely was aware of them after having been presented with more than 500 pages of medical exhibits Johnson attached to his Rule 32 petition. Moreover, in addition to the fact that trial counsel had informed the court about Johnson's health at sentencing, the trial court also noted that it had reviewed the presentence report, which contained similar information. And, Johnson did not raise this issue when the court asked him if he had anything to add at sentencing.

(*Id.* at pp. 2-3.)

**B.  Analysis**

In his Petition, Petitioner indicates his ground for relief is based upon "Ineffective Assistance of Counsel." (Petition, p. 6.) In the factual portion of his claim, Petitioner asserts that he was under "duress" due to the death of his significant other and his depression, and that his trial counsel failed to submit Petitioner's medical records which, according to Petitioner, would have resulted in the imposition of concurrent rather than consecutive sentences. (*Id.*)

To the extent that Petitioner mentions he was under duress, it is unclear whether he is attempting to raise an ineffective assistance claim related to that assertion. The record is clear that Petitioner did not raise such a claim before the state court in his PCR proceeding. Nor did he argue this fact in conjunction with the claim he did present to the state court. In order for this Court to address Petitioner's claim, he must first have exhausted the claim by presenting it to the state courts. *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (To fairly present a claim for purposes of exhaustion, the petitioner must describe the operative facts and federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional

claims.); *see also Moormann v. Schriro*, 426 F.3d 1044, 1056-57 (9th Cir. 2005), *cert. denied,* 548 U.S. 927 (2006) (new allegations of ineffective assistance of counsel not previously raised before the state court cannot be addressed on habeas review); *Date v. Schriro,* 619 F.Supp.2d 736, 788 (D.Ariz. 2008) (same). Moreover, the claim is procedurally defaulted because Petitioner's return to state court to exhaust this claim through another post-conviction relief proceeding would be futile given that such a proceeding is untimely under Ariz.R.Crim.P. 32.4. *See Beaty v. Stewart,* 303 F.3d 975, 987 (9th Cir. 2002) (a state post-conviction action is futile when it is time-barred). Nor do his claims qualify for any of the timeliness exceptions. *See* Ariz.R.Crim.P. 32.1(d)-(h). Thus, any additional petition for post-conviction relief would be subject to summary dismissal. *See State v. Rosario*, 987 P.2d 226, 228 (Ariz. Ct. App. 1999); *State v. Jones*, 897 P.2d 734 (Ariz. Ct. App. 1995); *Moreno v. Gonzales,* 962 P.2d 205, 209 (Ariz. 1998) (timeliness is a separate inquiry from preclusion). Under such circumstances, to the extent that Petitioner may be attempting to raise a claim of ineffective assistance of counsel related to his duress allegation, the claim is procedurally defaulted.[5] *Park v. California,* 202 F.3d 1146, 1150-51 (9th Cir. 2000) (federal habeas review is precluded where petitioner has not raised his claim in the state courts and the time for doing so has expired). Petitioner has not established cause or prejudice to excuse his procedural default. Consequently, any claim based on Petitioner's alleged duress is precluded from federal habeas review.

What remains is Petitioner's claim that counsel was ineffective for failing to submit Petitioner's medical records as mitigation. Because the appellate court adopted the trial

---

[5]The procedural timeliness bar of Rule 32.4(a), Ariz.R.Crim.P., is clear, consistently applied, and well established. *Powell v. Lambert*, 357 F.3d 871 (9th Cir. 2004); *see, e.g.*, *Rosario*, 987 P.2d 226 (where petitioner did not raise claims pursuant to Rule 32.1(d) through (g), the petition could be summarily dismissed if untimely); *Moreno*, 962 P.2d 205 (timeliness provision of Rule 32.4(a) became effective September 20, 1992); *Jones*, 897 P.2d 734 (Rule 32.4(a) was amended "to address potential abuse by defendants caused by the old rule's unlimited filing periods"); *see also Wagner v. Stewart,* 2008 WL 169639, *9 (D.Ariz. Jan. 16, 2008).

- 13 -

court's ruling denying Petitioner's PCR Petition on this issue, the trial court's order is the last-reasoned state court decision on the issue. *See Ylst,* 501 U.S. at 804; *Whipple,* 866 P.2d at 1360.

Petitioner does not challenge the factual findings of the state court. Instead, his claim challenges the trial court's determination that trial counsel's failure to submit Petitioner's medical records in mitigation did not constitute ineffective assistance of counsel under *Strickland*. There is no dispute on the record that trial counsel did not submit Petitioner's medical records at sentencing for purposes of mitigation. Therefore, Petitioner's claim falls under section 2254(d)(1). *See* 28 U.S.C. §2254(d)(1) (the court shall not grant habeas relief unless the state court's "decision was contrary to, or an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court"). Given that Petitioner does not challenge the state court's factual findings, the absence of the sentencing transcript is not detrimental to Respondents' case. Further, on the instant record, the state court's factual findings are presumed to be correct. *See* 28 U.S.C. §2254(e).

The state court, in applying *Strickland,* applied the correct law to the issue. *See Dows v. Wood,* 211 F.3d 480, 484-85 (9th Cir. 2000) (*Strickland* "is considered in this circuit to be []clearly established Federal law, as determined by the Supreme Court of the United States[] for purposes of 28 U.S.C. § 2254(d) review"). In applying *Strickland,* the trial court determined that defense counsel's performance was not ineffective.

"In judging the defense's investigation [at sentencing], as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, [*Strickland,*] 466 U.S. at 689, . . . and by giving a 'heavy measure of deference to counsel's judgments,' *id.*, at 691 . . . ." *Rompilla v. Beard,* 545 U.S. 374, 381 (2005). The U.S. Supreme Court has emphasized, with regard to investigation of mitigation evidence in capital cases, that:

> *Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. *Nor does Strickland require defense counsel to present mitigating evidence at sentencing in every case.* Both conclusions would interfere with the "constitutionally protected independence of counsel"

>     at the heart of *Strickland*, 466 U.S., at 689 . . . . We base our conclusion on the much more limited principle that "strategic choices made after less than complete investigation are reasonable" only to the extent that "reasonable professional judgments support the limitations on investigation." *Id.* at 690-691 . . . . A decision not to investigate thus "must be directly assessed for reasonableness in all the circumstances." *Id.*, at 691 . . . .

*Wiggins v. Smith,* 539 U.S. 510, 533 (2003) (emphasis added).

The same judge who sentenced Petitioner also ruled on Petitioner's PCR Petition. In denying Petitioner's PCR Petition, the court made clear that it "was aware of Petitioner's medical condition at the time of sentencing."[6] (Answer, Exh. J, p.3.) Moreover, at sentencing, trial counsel apprised the court that "they 'hope [Petitioner] will live to get out of prison' and that 'his time is very limited. Counsel asked the Court to take Petitioner's special circumstances and health situation into consideration." (*Id.* a p. 1.) Thus, the record reflects that although trial counsel did not present the court with Petitioner's medical records, trial counsel did inform the court about the severity of Petitioner's medical condition, emphasizing that Petitioner may not live out his sentences.[7]

Respondents also persuasively argue that the record supported the imposition of

---

[6]Respondents point out that prior to sentencing, the trial court granted trial counsel's motion to ensure that Petitioner was provided his prescription medications while in jail. (Answer, pp. 9-10 & Exh. U, p.1.) The court also directed "jail medical staff to immediately evaluate the defendant with respect to medications he is currently taking, i.e., combivir, dilantin, sustiva, and dapsone, and as to pain for the defendant's back and shoulder injuries." (Answer, Exh. U, p.1.) The court noted "for the record, and hereby advises jail medical personnel, that defense counsel has advised the Court it will be life threatening for the defendant if he does not receive the medications." (*Id.* at p. 2.) This minute-entry was not issued by the same judge who presided at Petitioner's sentencing and post-conviction relief proceedings.

[7]Respondents acknowledge that the Arizona Court of Appeals has remanded cases in post-conviction relief proceedings for an evidentiary hearing and/or resentencing based upon newly discovered evidence where the defendant was not diagnosed as HIV positive until *after* he was sentenced and, thus, the sentencing court had not been aware of the defendant's illness at the time of sentencing. *See State v. Ellevan*, 880 P.2d 139 (Ariz. Ct. App. 1994); *State v. Cooper*, 800 P.2d 992 (Ariz. Ct. App. 1990). *Ellevan* and *Cooper* did not involve a federal constitutional claim of ineffective assistance of counsel. Moreover, they are distinguishable because the record in the instant case establishes that the sentencing court was aware of Petitioner's HIV status at the time of sentencing.

1  presumptive, concurrent sentences in Petitioner's case. The Presentence Report reflected that
2  Petitioner had two prior DUI convictions, and Petitioner reported as well that "[h]e began
3  drinking gin and consumed a pint of gin every other day in addition to two forty ounces of
4  beer" but denied having an alcohol abuse problem. (Answer, p. 10 & Exh. T, p. 3; *see also*
5  Answer, Exh. B (allegation of prior DUI convictions).) Petitioner said that he only attended
6  "a few Alcoholic Anonymous (AA) meetings [when he was previously] in prison for
7  something to do." (Answer, Exh. T, p. 3.) Petitioner's girlfriend reported that Petitioner
8  "usually drank 24 ounces of beer, but at times consumed six beers in a day." (*Id.*) The
9  daughter of Petitioner's girlfriend believed that Petitioner had a drinking problem. (*Id.* at
10 p.4.) Petitioner's blood alcohol level supporting the underlying DUI charges arising on
11 January 1, 2004, was .232. (*Id.* at p. 1.) Despite being arrested for DUI on January 1, 2004,
12 Petitioner again drank and drove on May 19, 2004 with a blood alcohol content of .201,
13 resulting in the second arrest. (*Id.*) The recommendation from the Presentence Report was:
14 "It appears he is not motivated to stop drinking and a prison sentence will help protect the
15 community." (*Id.* at p. 4.) Moreover, Petitioner admitted having a prior historical felony
16 conviction for second-degree escape.

17 On the instant record, not only was the trial court aware of Petitioner's medical
18 situation but trial counsel, in turn, relied on the same to advance mitigation by advising the
19 court that Petitioner's medical situation was dire in that Petitioner's time was limited and he
20 may not outlive any sentence. Nor has Petitioner established how the submission of his
21 medical records would have resulted in different sentences. After having receiving more
22 than 500 pages of Petitioner's medical records during the PCR proceeding (*see* Answer, Exh.
23 L, p.2), the state court nonetheless concluded that Petitioner had failed to establish deficient
24 performance and prejudice. Thus, trial counsel having argued Petitioner's medical situation
25 in support of a lenient sentence, the record supports the conclusion that the state court
26 reasonably applied *Strickland* in concluding that trial counsel's performance did not fall
27 below an objective standard of reasonableness and that Petitioner failed to establish
28 prejudice. Consequently, the instant record reflects that the trial court's decision was neither

contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Petitioner's claim fails on the merits.

## IV. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability [hereinafter "COA"] when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detentions arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a state court judgment. This Court must determine, therefore, whether a certificate shall issue. The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. In the certificate, the Court must indicate which specific issues satisfy the showing. *See* 28 U.S.C. § 2253(c)(3).

To the extent that Petitioner attempts to raise an ineffective assistance of counsel claim because Petitioner was under "duress," the Court has determined that such claim is procedurally defaulted. To the extent that Petitioner claims ineffective assistance of counsel for failure to present the sentencing court with Petitioner's medical records in support of mitigation, the Court has denied the claim on the merits. On the instant record, reasonable

jurists would not find the Court's conclusions and ruling debatable. *See Slack*, 529 U.S. at 484.

Accordingly,

**IT IS ORDERED:**

(1) Petitioner's Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**. The Clerk of Court is directed to enter judgment accordingly and close this case.

(2) Petitioner is **DENIED** a certificate of appealability in this case.

DATED this 20th day of September, 2011.

_____
A. Wallace Tashima
United States Circuit Judge
Sitting by Designation